IN THE UNITED STATES COURT OF APPEALS FOR
THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| KALSHIEX LLC,<br><br>      Appellee/Plaintiff,<br><br>  v.<br><br>COMMODITY FUTURES TRADING COMMISSION,<br><br>      Appellant/Defendant. | No. 24-5205<br><br>(Appeal from Case No. 1:23-cv-03257) |

## APPELLANT CFTC'S REPLY IN SUPPORT OF ITS MOTION FOR EXPEDITED SCHEDULE

In accordance with this Court's October 3, 2024 Order, Appellant Commodity Futures Trading Commission ("CFTC" or "Commission") submits this reply in support of its Motion for Expedited Schedule for briefing, argument, and consideration of the issues on appeal. Though Appellee Kalshiex, LLC ("Kalshi") asserts that expedited consideration is not warranted because in the stay proceedings this Court found the CFTC did not demonstrate "irreparable harm," as discussed below, expedited consideration is nonetheless appropriate because this is a case "in which the public generally, or in which persons not before the Court, have an unusual interest in prompt disposition," and these reasons are "strongly

compelling." See D.C. CIRCUIT HANDBOOK OF PRACTICE AND INTERNAL PROCEDURES 34 (2021).

The public has an unusual interest in the prompt resolution of the merits of this case because the Court's holding has implications for the regulatory landscape for event contracts, the role that a federal agency will play in policing election markets, and indeed issues of election integrity and the perception of election integrity. The district court's decision on review has been interpreted to categorically except all election gambling contracts from the Commission's public interest review under the Commodity Exchange Act's "Special Rule," Section 5c(c)(5)(C), 7 U.S.C. § 7a-2(c)(5)(C). Dkt. No. 51 (finding that because "elections" neither are, nor closely relate to, "gaming" or "unlawful activity," contracts on elections are not subject to Commission public interest review). This appeal, as this Court has recognized, presents a "close and difficult" question on the merits.

The public's concern regarding the issues in this litigation is evidenced by the public discourse. The prudence of legalized election betting and the impact on the integrity of U.S. elections has been the subject of heated debate.[1] The public's

---

[1] Editorial Board, *Does betting on elections hedge political risk — or create more of it?*, WASHINGTON POST (Oct. 7, 2024), https://www.washingtonpost.com/opinions/2024/10/07/kalshiex-elections-gambling/; *Merkley Blasts Lifting Pause on Election Betting*, JEFF MERKELY

2

concerns about legalized election betting predate this litigation. For example, as the Commission highlighted, during the public comment period hundreds of members of the public expressed deep concerns about the harm election betting contracts could do to the integrity of United States elections. Whether or not that harm materializes, the comments evidence the risk to public *perceptions* of election integrity—at this moment in history, a profound concern in its own right.

In light of these public comments and relying on its own expertise in Commission-regulated markets, the Commission made significant public interest findings that were not reached by the district court. As the Commission observed, the trading of election contracts on Commission regulated exchanges could place the Commission in an election-policing role, one well outside of its traditional areas of expertise. This is because the Commission has a responsibility to address fraud and manipulation in its markets, and this role of safeguarding markets is unique to the CFTC. 7 U.S.C. § 9(c). All of these are strongly compelling reasons for an expedited resolution of the merits of this appeal.

---

SENATOR FOR OREGON (Oct. 2, 2024), https://www.merkley.senate.gov/merkley-blasts-lifting-pause-on-election-betting/; Lex, *Election betting looks more like gambling than hedging*, FIN. TIMES (Oct. 1, 2024), https://www.ft.com/content/caa73951-68eb-44a6-9e49-c0a67da1563b; Dennis Kelleher & Lisa Gilbert, *Why the push to legalize gambling on U.S. elections is so dangerous*, L.A. TIMES (May 28, 2024), https://www.latimes.com/opinion/story/2024-05-28/election-gambling-congress-investing-market-commodities-kalshi.

3

Kalshi protests any "rush" to resolve the question of the Commission's authority under the CEA to review election contracts. Yet Kalshi has hastily listed more than 25 election betting contracts in the three business days since the dissolution of this Court's administrative stay.[2] *See Elections*, KALSHI, https://kalshi.com/events/elections (last visited Oct. 8, 2024). Kalshi has certified a contract on each gubernatorial race, each house race, and each senate race, though not all such contracts are currently trading. *See Contracts for GovParty, HouseParty, and SenateParty Contract Terms (Elections)*, KALSHI, https://kalshi-public-docs.s3.amazonaws.com/regulatory/rulebook/rulebook_contracts_elections.pdf (last visited Oct. 8, 2024). Having gone full throttle on election betting, Kalshi now offers election gambling contracts on, among others, the outcome of the November 2024 presidential election, margins in the Electoral College, winner of the popular vote, as well as on various senate races, and at least one gubernatorial race. *Id*. Some of these blatantly contradict Kalshi's own arguments at the Court's

---

[2] The Commission determined control of Congress had only diffuse economic effects, which were not sufficiently direct or quantifiable such that the Congressional Control Contracts could serve a sufficient hedging or price-basing purpose. By contrast, many of Kalshi's new contracts do not have even an apparent attenuated hedging value or price-basing value. For example, Kalshi offers betting on which state will be the "tipping point" in the electoral college, and the margin of victory in the popular vote.

recent hearing—that its contracts are not gaming, because they are based on economically significant events. This cannot be said of a contract betting on whether a particular state will have the closest popular vote margin, or a contract on the winner of the popular vote, to name two. Kalshi has indicated no intention to stop there, and other markets have joined in on the action. This activity undoubtedly multiplies any pre-existing concerns about the impact to election integrity arising from election betting.

   Kalshi responds that election integrity concerns "cannot justify expediting" because "expedited briefing will have no impact on *this* election cycle" and "no expedition is needed to resolve this appeal long before the *next* election cycle." Kalshi Response at 2-3. But the risk to election integrity does not end the morning of November 6, 2024. And the argument is critically flawed: Kalshi has no apparent intention to adhere only to offering event contracts on congressional elections in November 2024. The risks posed by election betting might therefore extend, for example, to election runoffs and recounts held after November 5, or to off-year elections. In recent memory, the two races for U.S. Senate seats in Georgia went to a January 2021 run-off election after no candidate obtained a

5

majority of votes in November 2020.[3] The stakes in that election extended beyond the Senate seats themselves because the results determined the partisan control of the U.S. Senate. Kalshi might also list contracts on the certification of the results of the Presidential election, which will occur in January 2025,[4] or on special elections to fill congressional vacancies that often occur during a new term. Further, Kalshi's presidential contract provides that multiple iterations of the contract may be listed and traded at the same time, so it is possible that Kalshi itself will have both the 2024 and 2028 presidential election trading imminently, and they have certified a contract on the who will be selected as the nominee in each year.[5] Finally, state election dates may not be held in November or in a year on the federal election cycle, and Kalshi is already trading state election contracts.

---

[3] *See* Steve Peoples, et al., *Warnock, Ossoff win in Georgia, handing Dems Senate control*, ASSOCIATED PRESS (Jan. 6, 2021), https://apnews.com/article/georgia-election-results-4b82ba7ee3cc74d33e68daadaee2cbf3.

[4] And if not, the presidential markets will not settle until the certification. With regard to the 2020 presidential election, for example, PredictIt continued to price-in chances of a Trump Presidency being certified long after the election was determined. Nitish Pahwa, *Actually, Maybe Generate Gamblers Can't Predict Elections*, SLATE (Sept. 20, 2024), https://slate.com/technology/2024/09/kalshi-polymarket-cftc-lawsuit-prediction-markets-gambling.html.

[5] *Who will win the Presidential Election? Rules*, KALSHI, https://kalshi-public-docs.s3.amazonaws.com/contract_terms/PRES.pdf (last visited Oct. 8, 2024). While the website states foreigners are prohibited, the rules do not so prohibit. *Id.*; *see also PresNom Contract Terms (Elections)*, KALSHI, https://kalshi-public-docs.s3.amazonaws.com/regulatory/rulebook/rulebook_contracts_elections.pdf (last visited Oct. 8, 2024).

The suggestion that only this November and November 2026 matter for resolution of the issues on appeal is therefore misleading.

Last, Kalshi minimizes the Commission's request for prompt resolution of this appeal in light of the Commission's proposed regulation on event contracts, which Kalshi disdainfully characterizes as "regurgitat[ing]" the statutory interpretation and reasoning in the Commission's Order prohibiting the Congressional Control Contracts. Kalshi Response at 4. But that is precisely the reason expeditious resolution is important. With this Court considering the correct interpretation of the proposed regulation's enabling statute, 7 U.S.C. § 7a-2, the Commission cannot be certain about the bounds of its regulatory authority. The Court's decision could turn on the analysis of several statutory terms, all of which may impact the Commission's rulemaking. Kalshi is correct to note that the Commission has already spent valuable time proposing and considering the rule. Expedited consideration will help ensure that work does not grow stale. Accordingly, the Commission has demonstrated compelling reasons for an expedited briefing schedule.

At the same time, Kalshi has not articulated any prejudice that it or that the public will suffer as a result of expedited consideration. Nor could it. This appeal presents legal issues which have been thoroughly briefed before the district court and further addressed in the stay proceedings in this Court. This Court extensively

7

questioned the parties on the merits at the hearing in the stay proceedings. Expedited consideration, thus, may advance the interests identified in this motion without straining the resources of the parties or judicial economy.

Though Kalshi invokes "robust *amicus* participation" as counseling against expeditious resolution, this is not compelling. Amicus briefs are subject to a short deadline regardless of whether an expedited schedule is entered: this Court's Rule 29 provides that amicus briefs are due "no later than 7 days after the principal brief of the party being supported is filed." In any event, potential amici have had months since the inception of this litigation to consider the issues presented.

## CONCLUSION

For the foregoing reasons and those stated in the Commission's motion, this Court should grant the Commission's Motion for Expedited Schedule.

Dated: October 8, 2024                         Respectfully submitted,

                                           */s/ Raagnee Beri*
                                           Raagnee Beri
                                               *Senior Assistant General Counsel*

                                           Robert A. Schwartz
                                               *General Counsel*
                                           Anne W. Stukes
                                               *Deputy General Counsel*
                                           Margaret P. Aisenbrey
                                               *Senior Assistant General Counsel*

                Conor B. Daly
                 *Counsel*
Commodity Futures Trading Commission 1155 21st Street, NW
Washington, D.C. 20581-0001
Phone: (202) 418-5986
rberi@cftc.gov

## CERTIFICATE OF COMPLIANCE

I hereby certify under Fed. R. App. P. 32(g)(1) the following:

1. This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), it contains 1,590 words, as counted by the word processing software Microsoft Word.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5)-(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word, in Times New Roman 14-point type.

Dated: October 8, 2024                     */s/ Raagnee Beri*

## CERTIFICATE OF SERVICE

I hereby certify that on October 8, 2024, I served the foregoing Motion for Expedited Schedule on counsel of record using this Court's CM/ECF system.

<u>*/s/ Raagnee Beri*</u>