ORAL ARGUMENT NOT YET SCHEDULED

No. 24-5205

# In the United States Court of Appeals for the District of Columbia Circuit

_____

KALSHIEX LLC,
PLAINTIFF-APPELLEE,

*v.*

COMMODITY FUTURES TRADING COMMISSION,
DEFENDANTS-APPELLANT.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA, NO. 23-cv-03257, HON. JIA M. COBB, PRESIDING

_____

**BRIEF FOR *AMICUS CURIAE* JEREMY D. WEINSTEIN IN SUPPORT OF APPELLEE AND AFFIRMANCE**

_____

CHRISTOPHER E. MILLS
*Spero Law LLC*
*557 East Bay Street #22251*
*Charleston, SC 29413*
*(843) 606-0640*
*cmills@spero.law*

Counsel for *Amicus Curiae*

# CERTIFICATE OF PARTIES, RULINGS, AND RELATED CASES

**(A)   Parties**

All parties, intervenors, and *amici* appearing before the district court and in this Court are listed in the Opening Brief for Appellant.

**(B)   Rulings Under Review**

Reference to the ruling at issue appears in the Opening Brief for Appellant.

**(C)   Related Cases**

Related cases are listed in Appellant's opening brief. This case has not previously been before this Court, except for a motions panel's resolution of the Appellant's motion for a stay pending appeal in this case, No. 24-5205.

/s/ *Christopher Mills*
CHRISTOPHER MILLS

## REPRESENTATION OF CONSENT FROM ALL PARTIES AND CERTIFICATE STATING WHY A SEPARATE BRIEF IS NECESSARY

In accordance with FRAP 29(a)(2) and D.C. Circuit Rule 29(b), undersigned counsel certifies that all parties have consented to the filing of this brief.

Pursuant to D.C. Circuit Rule 29(d), undersigned counsel further certifies that this separate brief is necessary. *Amicus* knows of no other *amicus curiae* focusing on the issues discussed here.

# TABLE OF CONTENTS

                                                        **Page**

Certificate of Parties, Rulings, and Related Cases ...................................................i

Representation Of Consent From All Parties And Certificate Stating Why A Separate Brief Is Necessary .................................................................................. ii

Table of Authorities ................................................................................................iv

Interest of *Amicus Curiae* and Summary ................................................................1

Argument..................................................................................................................2

Conclusion ...............................................................................................................6

Certificate of Compliance

Certificate of Service

## TABLE OF AUTHORITIES

Page(s)

Black's Law Dictionary (12th ed. 2024) ................................................................6

CFTC, Event Contracts, Notice of Proposed Rulemaking, 89 Fed. Reg. 48968 (Jun. 10, 2024)............................................................................................... 2, 3, 4

Foretek, *Kalshi Says Elections Aren't Games In Voting Wager Hearing*, Law360 (May 30, 2024) .................................................................................................5, 6

Jeremy D. Weinstein, *Football Gambling Futures Contracts: Can the CFTC Measure Up to the Keystone Cops?*, 41 Futures & Derivatives Law Report (Jul./Aug. 2021), https://bit.ly/3qJrBZ4 ...............................................................4

Hearing Tr., *Kalshi v. CFTC*, No. 1:23-cv-03257-JMC (May 30, 2024)……………5

The Federalist No. 53 (Madison) ............................................................................5

Wessel & Weissenberg, *The Role Of Dictionaries In Last Term's High Court Decisions*, Law360 (Jul. 12, 2019) .........................................................................3

## INTEREST OF *AMICUS CURIAE* AND SUMMARY

*Amicus* Jeremy D. Weinstein is a private energy commodities law transactional and regulatory attorney. *Amicus* has long been interested in seeking transparency for the law regarding commodities, especially when it comes to the opaque rulemaking often engaged in by the Commodity Futures Trading Commission (CFTC), so that energy companies can enjoy the benefits of being able to comply with tractable law and regulation. *Amicus* has contributed scholarship on issues in commodity law regulation, including by writing articles and submitting comments in federal and state rulemakings. *Amicus* also submitted a brief in the district court proceeding.

No party's counsel authored this brief in whole or in part. No party or party's counsel contributed money to fund the preparation or submission of this brief. No person—other than the *amicus curiae* and his counsel—contributed money to fund the preparation or submission of this brief.

This brief presents the lack of foundation for the CFTC's position on what it calls the "plain meaning" of the statute.

# ARGUMENT

The CFTC's arguments about the "plain meaning" of § 5c(c)(5)(C) of the Commodity Exchange Act are foundationally flawed. In 2010, Congress added § 5c(c)(5)(C) to the Commodity Exchange Act and empowered the CFTC to prohibit futures contracts that "involve … gaming." But, according to the CFTC, contracts that "involve … gaming" do not include contracts that "involve" "games":

> [I]t is difficult to conceive of a contract whose underlying event, itself, is "gaming." If "involve" were to refer only to a contract's underlying [event], contracts based on sporting events such as horse races and football games would not qualify, because sports typically are not understood to be "gaming"—they are understood to be "games." In effect, if "involve" were to refer only to a contract's underlying [event], the scope of certain prongs of CEA section 5c(c)(5)(C) could effectively be limited to a null set of event contracts, which could not have been Congress's intent.[1]

Based on this false assumption that the word "gaming" couldn't possibly mean "games," because "games" is a "null set," the CFTC argued that Congress must have authorized the CFTC to prohibit any conceivable *synonym* for "gaming":

> The Commission proposes to define "gaming" in new § 40.11(b)(1) as "the staking or risking by any person of something of value upon: (i) the outcome of a contest of others; (ii) the outcome of a game involving skill or chance; (iii) the performance of one or more competitors in one or more contests or games; or (iv) any other occurrence or non-occurrence in connection with one or more contests or games."[2]
> …

---

[1] CFTC, Event Contracts, Notice of Proposed Rulemaking, 89 Fed. Reg. 48968, 48974 n.61 (Jun. 10, 2024).
[2] *Id.* at 48974.

2

> [T]he Commission proposes to set forth in new § 40.11(b)(2) a non-exclusive list of examples of activities that constitute "gaming," as proposed to be defined … The Commission emphasizes that the list of examples provided in proposed § 40.11(b)(2) is non-exclusive. To the extent that other activity falls within the definition of "gaming" set forth at proposed § 40.11(b)(1), such activity would also constitute "gaming."[3]

From there, the CFTC argued that anything within an internet dictionary's "ordinary meaning" of any of the *synonyms* of gaming falls within the statutory prohibition:

> The Commission considers the term "contest" to have its ordinary meaning, and to encompass a "competition." See, e.g., MERRIAM-WEBSTER.COM, available at https://www.merriam-webster.com/dictionary/contest (defining the noun "contest" as: "1) a struggle for superiority or victory: competition; 2) a competition in which each contestant performs without direct contact with or interference from competitors").[4]

Then, the CFTC goes on to argue that the "examples" of synonyms also includes possible *metaphors* that use any of the synonyms.[5] This allowed the CFTC to label elections as "games," because they are sometimes described as "political contests":

> Proposed § 40.11(b)(2) states that "gaming" includes, but is not limited to, the staking or risking by any person of something of value upon: (i)

---

[3] *Id.* at 48975.
[4] *Id.* at 48974–75 n.65. Courts citing dictionaries typically cite actual dictionaries rather than internet sites. *See, e.g.*, Wessel & Weissenberg, *The Role Of Dictionaries In Last Term's High Court Decisions*, Law360 (Jul. 12, 2019).
[5] *See* 89 Fed. Reg. at 48975.

3

the outcome of a political contest, including an election or elections ....[6]

Stringing together each of these leaps of logic reveals just how convoluted the CFTC's reasoning is. According to the agency, congressional authorization allowing it to prohibit event contracts involving "gaming" could not possibly be limited to games, since "games" is a "null set." Thus, the argument goes, the CFTC must have authorization to prohibit event contracts for anything that is potentially synonymous with "gaming." And because "contest" is one synonym for gaming, and people sometimes say "political contest" as a metaphor for an election, the CFTC can supposedly prohibit futures contracts on elections under the theory that they "involve ... gaming."

Problem is, that's not what Congress said. Congress gave the CFTC power to prohibit contracts that "involve ... gaming." The ordinary understanding of "gaming" in this context includes sporting events and other low-stakes competitions. Futures contracts on football games, for instance, are clearly prohibited by § 5c(c)(5)(C), though the CFTC and its Commissioners seemed confused when presented with this question a few years ago.[7] Given that the plain meaning of "gaming"

---

[6] *Id.* The use of the word "including" might imply that the CFTC believes that there is a superset of "political contests" of which "elections" are only a subset.

[7] Jeremy D. Weinstein, *Football Gambling Futures Contracts: Can the CFTC Measure Up to the Keystone Cops?*, 41 Futures & Derivatives Law Report (Jul./Aug. 2021), https://bit.ly/3qJrBZ4.

4

is clear, there was no reason for the CFTC to adopt an atextually broad reading of the term. By including metaphors and synonyms within its definition of "gaming," the CFTC seeks to expand its authority beyond what the text of the statute can bear.

In common parlance, elections are not "games." In fact, given their high stakes, they are in large part the opposite of what people ordinarily refer to as a "game." Elections are the mechanism by which democratic republics decide who will wield the power yielded by the citizenry to the government. Free elections are foundational to any free society. *See, e.g.*, The Federalist No. 53 (Madison).

In the district court, the CFTC could not identify outer boundaries for "game." In the May 30, 2024, district court oral argument, the following exchange occurred:

> THE COURT: Besides elections, in your view, is there a contest of others that doesn't involve a game as plaintiff would define what game means?
>
> MS. STUKES [counsel for the CFTC]: I actually thought the horse race wasn't a game. But there are contests, Academy Awards, award types of things that doesn't seem like a game, just seems like a contest.[8]

The CFTC's expansive vision of "gaming" essentially allows it to regulate betting on contests, competitions that have winners and losers, of any kind.[9] When

---

[8] Hearing Tr. 55, *Kalshi v. CFTC*, No. 1:23-cv-03257-JMC (May 30, 2024).
[9] *See* Foretek, *Kalshi Says Elections Aren't Games In Voting Wager Hearing*, Law360 (May 30, 2024) ("But when Judge Cobb pressed Stukes on what else the agency's definition of 'gaming' might prohibit for futures betting aside from games and sports in the traditional sense, Stukes hesitated before pointing to the outcome of an awards show like the Grammys. On rebuttal, Jones Day's Yaakov Roth pointed

5

pressed on this at a hearing below, the agency admitted this much.[10] But this ignores fundamental differences between different contests. Though almost all games are contests, not all contests can be considered games.

Games are "contest[s], for amusement or for a prize." Black's Law Dictionary (12th ed. 2024). Ask any random set of Americans to list their favorite games, and you will get similar responses that reflect this common understanding: football, soccer, tennis, basketball, or perhaps chess or Mario Kart. Political elections do not fall within this same category. Elections are contests, but they are not games. They are not undertaken for amusement or entertainment. Rather, democratic countries hold elections for the very significant purpose of establishing their government. Thus, elections are excluded from any ordinary understanding of the term "game."

## CONCLUSION

The Court should affirm.

---

out that, actually, Kalshi offers contracts on awards show outcomes, and has done so for 'a long time.' 'They've never subjected those to review,' he told Judge Cobb. 'I think that really underscores the…outcome-driven aspect of this. It's not statutory interpretation.'").
[10] *Id.*

                                    Respectfully submitted,

                                    /s/ *Christopher Mills*
                                    CHRISTOPHER E. MILLS
                                    *Spero Law LLC*
                                    *557 East Bay Street #22251*
                                    *Charleston, SC 29413*
                                    *(843) 606-0640*
                                    *cmills@spero.law*

                    Counsel for *Amicus Curiae*

NOVEMBER 22, 2024

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation provided by D.C. Cir. R. 24(a)(5) because it contains 1,411 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and D.C. Cir. R. 32(e)(1).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word 365 in 14-point Times New Roman.

                                                     /s/ *Christopher Mills*
                                                     CHRISTOPHER MILLS

NOVEMBER 22, 2024

## CERTIFICATE OF SERVICE

I certify that on this day the foregoing was served electronically on all parties via CM/ECF.

/s/ *Christopher Mills*
CHRISTOPHER MILLS

NOVEMBER 22, 2024